## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
## MACON DIVISION

| | |
|---|---|
| RONALD T. KNIGHT,          ) | |
|          ) | |
| **Plaintiff,**          ) | |
|          ) | |
| **v.**          ) | CIVIL ACTION NO. 5:14-CV-424(MTT) |
|          ) | |
| **NAVIENT, LLC,** *et. al.,*          ) | |
|          ) | |
| **Defendants.**          ) | |
|          ) | |

## ORDER

Plaintiff Ronald Knight filed this lawsuit against Defendants Navient, LLC[1] and Navient Solutions, Inc. ("NSI")[2] for alleged violations of Georgia's Fair Business Practices Act, Georgia's Unfair or Deceptive Practices toward the Elderly Act, Georgia's Computer Systems Protection Act, and the Fair Credit Reporting Act ("FCRA"), and for state-law claims for fraud and declaratory and injunctive relief.  (Doc. 1-1).

Knight and the Defendants have filed cross-motions for judgment on the pleadings.  (Docs. 14; 19).  Knight has also moved for declaratory judgment or partial

---

[1] The Court takes judicial notice of Navient Corporation's publicly disclosed filing with the Securities and Exchange Commission ("SEC"), which states that "Navient, LLC was merged with and into Navient [Corporation], with Navient [Corporation] as the surviving corporation" and that Navient Solutions, Inc. is "a wholly owned subsidiary of the Company."  Form 10-K for Navient Corporation, https://investor.shareholder.com/navi/secfiling.cfm?filingid=1193125-15-70145&cik=1593538.  *See Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1278 (11th Cir. 1999) (concluding that taking judicial notice of statements contained in SEC documents is permitted by Fed. R. Evid. 201).  Lori Ungvarsky, a customer advocate at NSI, also stated in her declaration that "Navient Corporation is the parent company of NSI." (Doc. 29-3 ¶ 4).

[2] According to the Defendants in their corporate disclosure statement and in Ungvarsky's declaration, NSI was formerly known as Sallie Mae, Inc. before it changed its name in 2014.  (Docs. 4 at 1; 29-3 ¶ 3). Therefore, at the time of the events underlying Knight's claims, the Defendant was called Sallie Mae, Inc. and thus Knight refers to "Sallie Mae" throughout his complaint and briefs.  However, given that Sallie Mae, Inc. is now NSI, the Court will refer to "Sallie Mae" as NSI when discussing its alleged conduct. However, the Court will refer to the Sallie Mae loan as the Sallie Mae loan.

summary judgment on his state-law claim for declaratory relief.[3]  (Doc. 21).  The

Defendants have moved for summary judgment on all claims.  (Doc. 29).  For the

following reasons, Knight's motion for judgment on the pleadings as to the FCRA claim

is **DENIED**.  The Defendants' motion for judgment on the pleadings as to the FCRA

claim is **DENIED**.  The Defendants' motion for summary judgment is **GRANTED** as to

the FCRA claim.  The Court declines to exercise supplemental jurisdiction over the

state-law claims, and those claims are **REMANDED** to state court.[4]

## I.      BACKGROUND[5]

This case arises from a student loan dispute.  In July 2003, Knight's son Paul

was accepted at John Marshall Law School and applied for a loan pursuant to the Sallie

Mae LAWLOANS program, which Knight co-signed.  (Docs. 29-2 ¶¶ 8, 16; 31 at 10:13-

18; 29-32; 32 at 38:3-12).  Lori Ungvarsky, who is employed by NSI, stated in her

---

[3] In his motion, Knight cites the federal Declaratory Judgment Act.  (Doc. 21-1 at 6).  However, his complaint clearly states that he seeks declaratory and injunctive relief pursuant to O.C.G.A. §§ 9-4-1 and 9-5-1.  (Doc. 1-1 ¶ 3).  Indeed, the basis for the removal of this action was the Court's federal question jurisdiction over the Fair Credit Reporting Act claim alone.  (Doc. 1).  Accordingly, consistent with his complaint, the Court treats Knight's claims for declaratory and injunctive relief as pursuant to Georgia law. In any event, "the Declaratory Judgment Act does not, of itself, confer jurisdiction upon federal courts." *Stuart Weitzman, LLC v. Microcomputer Res., Inc.*, 542 F.3d 859, 861-62 (11th Cir. 2008).  Rather, "[f]ederal question jurisdiction exists in a declaratory judgment action if the plaintiff has alleged facts in a well-pleaded complaint which demonstrate that the defendant *could* file a coercive action arising under federal law." *Id.* at 862 (internal quotation marks and citation omitted).  However, nothing in Knight's complaint or his motion suggests that he is seeking declaratory relief to precipitate a coercive *federal* action by the Defendants.  Rather, it appears Knight precipitates a state action by the Defendants to enforce payment on the promissory note.  Therefore, federal question jurisdiction has not been established over Knight's claim for declaratory judgment.

[4] Also pending is the Defendants' motion for a second extension of time to respond to Knight's motion for partial summary judgment.  (Doc. 35).  That motion is **DENIED as moot**.

[5] Throughout Knight's response to the Defendants' statement of material facts, Knight repeatedly objects to various facts on the grounds that they are neither relevant nor material and that the Defendants "designed these statements of fact solely to harass and burden plaintiff with irrelevant facts intended solely to prejudice, mislead, or confuse the Court." (Doc. 39-3 ¶¶ 1-3, 5-20, 22-31, 33-40, 42-48, 52, 56-57, 60-61, 64, 71-72).  The Court disagrees that these facts harass or burden Knight or prejudice, mislead, or confuse the Court.  In any event, the Court does not rely on those facts that are actually irrelevant or immaterial in granting summary judgment as to the FCRA claim.  Accordingly, Knight's objections are **OVERRULED**.

declaration that because John Marshall did not participate in the LAWLOANS program,

Paul's application was terminated.[6]  (Doc. 29-3 ¶ 6).  Paul testified in his deposition that

he then asked John Marshall if he could apply for the Nellie Mae EXCEL loan.  (Doc. 31

at 14:1-5).  Thereafter, according to Ungvarsky, "Nellie Mae received an electronically

signed Nellie Mae EXCEL Grad Loan Application and Promissory Note …, containing

electronic signatures of 'Paul R. Knight' and 'Ronald T. Knight.'"  (Docs. 29-3 ¶ 9; 29-4

at 1-2).  Ungvarsky stated that NSI purchased the EXCEL loan on March 22, 2004.

---

[6] Knight objects to the admissibility of Ungvarsky's declaration and the attached exhibits.  (Doc. 39-2 at 6).  Knight challenges Ungvarsky's personal knowledge because she was not present when the EXCEL loan was signed.  (*Id.*).  Ungvarsky swears that she made the declaration based on her personal knowledge after she examined the business records kept in NSI's ordinary course of business.  (Doc. 29-3 ¶¶ 1-2).  This is sufficient pursuant to Fed. R. Evid. 803(6).  *See U.S. v. Langford*, 647 F.3d 1309, 1327 (11th Cir. 2011) ("It is not essential that the offering witness be the recorder or even be certain of who recorded the item.  It is sufficient that the witness be able to identify the record as authentic and specify that it was made and preserved in the regular course of business." (internal quotation marks and citation omitted)).  Accordingly, Knight's objection on this ground is **OVERRULED** for purposes of this motion.

Knight also objects to the admissibility of each exhibit attached to her declaration.  Knight argues Exhibit 1—the Nellie Mae EXCEL loan and promissory note—is hearsay because "Ungvarsk[y] claims no personal knowledge that she observed Knight sign the Nellie[]Mae Promissory Note" and thus does not satisfy the business records exception.  (Doc. 39-2 at 6).  However, the promissory note, as a contract, is a verbal act and thus not hearsay.  *See Moody v. Coliseum Psychiatric Ctr., LLC*, 2006 WL 1652281, at *5-6 (M.D. Ga.).  Knight argues Exhibit 2—the July 22, 2007 invoice—is hearsay and is not the original document or copy of the original document.  However, the invoice is not hearsay because it is not being offered to prove the truth of the matter asserted, and in any event, the Court does not rely on the document.  Knight argues Exhibit 3—the August 23, 2007 letter—is hearsay and is not the original document or copy of the original.  However, the letter is not being offered to prove the truth of the matter asserted, and the Court does not rely on the document.  Knight objects to Exhibits 4 and 5—the automated consumer dispute verifications—as irrelevant.  However, these documents are directly relevant to the FCRA claim regarding whether the Defendants conducted a reasonable investigation.  Finally, Knight objects to the admissibility of Exhibit 5, the declaration of J.M. Harris.  However, the Court does not rely on this declaration.  Accordingly, for the foregoing reasons, Knight's objections are **OVERRULED** for purposes of this motion.

Knight also challenges the "general lack of trustworthiness" of the Defendants' evidence and specifically the authenticity of Exhibit 3 and the Nellie Mae EXCEL note.  (Doc. 39-2 at 3-5).  As discussed, the Court has overruled Knight's objection to Exhibit 3 as the Court does not rely on this evidence.  As to the Nellie Mae EXCEL note, "[i]n considering a summary judgment motion, a court may only consider evidence that is admissible or that could be presented in an admissible form." *Denney v. City of Albany*, 247 F.3d 1172, 1189 n.10 (11th Cir. 2001).  Based on her declaration, it is apparent Ungvarsky could testify at trial to the authenticity of the note.  In any event, the Court does not rely on the note for purposes of addressing Knight's FCRA claim.  Accordingly, Knight's objections are **OVERRULED** for purposes of this motion.

(Doc. 29-3 ¶ 14).  Knight denied that he ever signed the EXCEL loan and does not know who did.  (Docs. 29-2 ¶ 32; 32 at 56:18-57:18; 39-3 ¶ 10).

Knight testified in his deposition that in July 2007 he received a letter that payment on the EXCEL loan was past due.  (Docs. 29-2 ¶ 51; 32 at 78:22-25, 79:23-81:13; 39-3 ¶ 17).  At his deposition, Knight confirmed that it was at this point that he "had a question about whether or not that was a loan that [he] actually owed."  (Doc. 32 at 140:8-18).  Nevertheless, in August 2007, Knight began making payments and called NSI to request details about the loan.  (Docs. 29-3 ¶ 19; 29-20).

According to Knight, in November 2010, he told NSI that he was still waiting on details of the Sallie Mae loan, and then NSI sent him a copy of the Nellie Mae EXCEL loan documents with his purported electronic signature.  (Docs. 29-2 ¶¶ 62-63; 32 at 88:25-90:7).  This electronic signature appears as a string of numbers and letters.  (Doc. 29-9 at 2).  Believing that someone forged his signature, Knight called NSI's fraud department.  (Doc. 32 at 91:12-19).  According to Knight, the department did nothing.  (*Id.* at 91:19-21).  In her declaration, Ungvarsky stated that in August 2012, Knight requested a copy of the loan and promissory note again.  (Doc. 29-3 ¶ 21).  On August 28, NSI mailed Knight the EXCEL loan.  (Doc. 1-2 at 44-54).

On September 6, 2012, Knight sent NSI a letter in which he explained that he received a letter in 2007 that stated his son had failed to make payments on his student loans and Knight was obligated to make payments because he was a co-signor on the promissory note.  (Doc. 1-2 at 55).  Knight stated he "did not recall actually co-signing a note" in 2007 but rather an application for a student loan which expressed his willingness to co-sign a note.  (*Id.*).  Nevertheless, Knight told NSI he began making

payments anyways because he did not want "to complicate [his] life any further."  (*Id.*).

In this letter, Knight again disputed his obligations on the loan and stated that he had

repeatedly requested a copy of a signed promissory note.  (*Id.*).  He added that "[his]

position in this matter is that Sallie Mae wrongfully sent [him] a letter threatening

collection procedures on an alleged student loan to [his] son."  (*Id.* at 56).  NSI replied

by providing the EXCEL loan again.  (Doc. 1-2 at 62-65).  According to Ungvarsky, the

fraud department reviewed Knight's loan on September 17, 2012, and thereafter, a

representative advised Knight regarding the history and status of the loan.  (Doc. 29-2

¶¶ 68-69).

Knight then reported his dispute to credit reporting agencies.  On September 2,

2014, Advance Call Center Technologies LLC ("ACT"), on NSI's behalf, responded to

two automated consumer dispute verifications from TransUnion and Equifax regarding

the student loan.  (Docs. 29-2 ¶ 71; 29-3 ¶ 23; 39-3 ¶ 15).  The dispute code from

TransUnion stated "Not liable for account (i.e., ex-spouse, business).  If liable, provide

or confirm complete ID or ECOA code."  (Doc. 29-4 at 15).  The dispute code from

Equifax stated "Not his/hers.  Provide or confirm complete ID."  (Doc. 29-4 at 18).  ACT,

on NSI's behalf, confirmed Knight's identifying information and that NSI's records

indicated "joint contractual liability" on the loan.  (Docs. 29-2 ¶ 72; 29-3 ¶ 23; 29-4 at 15-

20).  While Knight agreed at his deposition that his personal identifying information was

accurate, he disputed that he was jointly liable on the loan.  (Doc. 32 at 109:19-110:21).

After the investigation, NSI sent a letter to Knight stating that it had conducted an

investigation and concluded the information it provided to credit reporting agencies was

valid.  (Doc. 29-21).  Knight expressed worry at his deposition that the existence of this

loan on his credit report could affect his ability to get a loan in the future.  (Doc. 32 at 114:20-22).  However, it is undisputed that Knight has not been denied credit as a result of this loan and that he was able to refinance his mortgage in 2013 in conjunction with the renovation on his home.  (Docs. 29-2 ¶¶ 73-74; 39-3 ¶ 45).

On November 3, 2014, Knight filed this lawsuit in Bibb County Superior Court. (Doc. 1-1).  The Defendants then removed the action to this Court.

## II.      DISCUSSION

### A.      Motion for Judgment on the Pleadings Standard

Pursuant to Fed. R. Civ. P. 12(c), "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings."  "Judgment on the pleadings is appropriate when there are no material facts in dispute and the moving party is entitled to judgment as a matter of law."  *Douglas Asphalt Co. v. Qore, Inc.*, 541 F.3d 1269, 1273 (11th Cir. 2008) (citing *Cannon v. City of W. Palm Beach*, 250 F.3d 1299, 1301 (11th Cir. 2001)).  A motion for judgment on the pleadings is governed by the same standard as a Rule 12(b)(6) motion.  *See Mergens v. Dreyfoos*, 166 F.3d 1114, 1117 (11th Cir. 1999) ("When reviewing judgment on the pleadings, we must take the facts alleged in the complaint as true and view them in the light most favorable to the nonmoving party.").

To avoid dismissal pursuant to Fed. R. Civ. P. 12(b)(6), a complaint must contain sufficient factual matter to "'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "At the motion to dismiss stage, all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable

to the plaintiff." *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1261 (11th Cir. 2006) (internal quotation marks and citation omitted).  However, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (alteration in original) (quoting Fed. R. Civ. P. 8(a)(2)). "[C]onclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal."  *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002).  The complaint must "give the defendant fair notice of what the ... claim is and the grounds upon which it rests."  *Twombly*, 550 U.S. at 555 (alteration in original) (internal quotation marks and citation omitted).  Where there are dispositive issues of law, a court may dismiss a claim regardless of the alleged facts.  *Marshall Cty. Bd. of Educ. v. Marshall Cty. Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993).

### B.    Motion for Summary Judgment Standard

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A factual dispute is not genuine unless, based on the evidence presented, "'a reasonable jury could return a verdict for the nonmoving party.'"  *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002) (quoting *United States v. Four Parcels of Real Prop.*, 941 F.2d 1428, 1437 (11th Cir. 1991)); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The movant may support its assertion that a fact is undisputed by "citing to particular parts of materials in the record, including depositions, documents, electronically stored

information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A).

The burden then shifts to the non-moving party, who must rebut the movant's showing "by producing … relevant and admissible evidence beyond the pleadings." *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1315 (11th Cir. 2011) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)).  The non-moving party does not satisfy its burden "if the rebuttal evidence 'is merely colorable, or is not significantly probative' of a disputed fact." *Id.* (quoting *Anderson*, 477 U.S. at 249-50).  Further, where a party fails to address another party's assertion of fact as required by Fed. R. Civ. P. 56(c), the Court may consider the fact undisputed for purposes of the motion. Fed. R. Civ. P. 56(e)(2).  However, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge. … The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255.

### C.   The FCRA Claim

#### 1.  Knight's Motion for Judgment on the Pleadings

Knight has generally moved for judgment on the pleadings on the grounds that (1) the Defendants have produced no evidence to disprove Knight's claims and (2) they made judicial admissions in their answer which establish the success of Knight's claims. (Doc. 19).  On a Rule 12(c) motion based on the parties' pleadings, the Defendants do not bear a burden to offer evidence outside of their pleadings.  *See Horsley v. Feldt*,

304 F.3d 1125, 1136 n.6 (11th Cir. 2002).  Accordingly, Knight's first argument lacks

merit as to the FCRA claim.

As to the second argument, the Defendants in their answer expressly denied

those allegations that would establish Knight's FCRA claim on the pleadings.

Specifically, they denied that they are liable for the alleged FCRA violation and denied

all of the specific allegations under the FCRA claim.  (Doc. 3 ¶¶ 4, 76-87).  Given these

responses, Knight is not entitled to judgment on the pleadings.  Thus, Knight's motion

for judgment on the pleadings is **DENIED** as to the FCRA claim.

### 2.  The Defendants' Motions

The Defendants' primary argument as to the FCRA claim is the same in their

motion for judgment on the pleadings as in their motion for summary judgment: Knight

has failed to establish the Defendants did not reasonably investigate the disputes

received from the credit reporting agencies.[7]  (Docs. 14-1 at 11-13; 29-1 at 14-16).

Although it appears Knight sufficiently alleged a FCRA claim in his complaint, the Court

reviews the claim pursuant to the summary judgment standard.

Knight claims that the Defendants violated 15 U.S.C. § 1681s-2(a) because they

knowingly reported false information to credit reporting agencies and that they violated

15 U.S.C. § 1681s-2(b) because they failed to properly investigate Knight's dispute.

(Doc. 1-1 ¶¶ 78-83).  The Defendants argue they are entitled to summary judgment

because there is no private right of action under § 1681s-2(a) and because Knight

---

[7] The Defendants also generally argue that Navient, LLC is entitled to summary judgment outright because Knight "provides no evidence of any conduct by Navient, LLC or Navient Corporation (into which Navient, LLC merged) to support his claims." (Doc. 29-1 at 3).  In support, the Defendants cite *Williamson v. Walmart Stores, Inc.* in which the Court analyzed whether the plaintiff had alleged sufficient facts that the subsidiary was an alter ego of the parent corporation for the Court to exercise personal jurisdiction over the parent corporation.  2015 WL 1565474, at *3-4 (M.D. Ga.).  To the extent the Defendants argue the Court lacks personal jurisdiction over Navient, LLC, or Navient Corporation, that argument has been waived.  *See Palmer v. Braun*, 376 F.3d 1254, 1259 (11th Cir. 2004).

"cannot demonstrate Navient failed to reasonably investigate the dispute received from the [credit reporting agencies]" pursuant to § 1681s-2(b) or that he suffered injury as a result of the investigation.  (Doc. 29-1 at 14-16).

Those furnishing "any information relating to a consumer to any consumer reporting agency" have a duty pursuant to 15 U.S.C. § 1681s-2(a) to provide accurate information "relating to a consumer to any consumer reporting agency."  15 U.S.C. § 1681s-2(a)(1)(A).  However, the FCRA does not provide a private right of action to redress violations of § 1681s-2(a).  *See* 15 U.S.C. § 1681s-2(c); *see also Green v. RBS Nat'l Bank*, 288 F. App'x 641, 642 (11th Cir. 2008).  Accordingly, the Defendants are entitled to summary judgment on the FRCA claim premised on their allegedly providing inaccurate information to credit reporting agencies.

There is a private right of action to redress violations of 15 U.S.C. § 1681s-2(b).  This provision requires furnishers of credit information to investigate disputed information after receiving notice of a dispute, "review all relevant information provided by the consumer reporting agency[, and] report the results of the investigation to the consumer reporting agency."  15 U.S.C. § 1681s-2(b)(1); *see also Westra v. Credit Control of Pinellas*, 409 F.3d 825, 827 (7th Cir. 2005).  Knight alleges that the Defendants violated this provision by failing "to conduct a proper investigation."  (Doc. 1-1 ¶ 83).  "Whether an investigation conducted by a furnisher in response to a notice of dispute is reasonable … depends in large part on the allegations by the consumer and the notice of the allegations provided to the furnisher by the credit reporting agency." *Howard v. Pinnacle Credit Servs., LLC*, 2010 WL 2600753, at * 3 (M.D. Ga.).  "An investigation is not necessarily unreasonable because it results in a substantive

conclusion unfavorable to the consumer, even if that conclusion turns out to be inaccurate." *Gormon v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1161 (9th Cir. 2009). The plaintiff bears the burden of showing the investigation was unreasonable. *Chiang v. Verizon New England Inc.*, 595 F.3d 26, 37 (1st Cir. 2010). "[S]ummary judgment is proper if the reasonableness of the defendant's procedures is beyond question." *Howard*, 2010 WL 2600753, at *3 (quoting *Westra*, 409 F.3d at 827).

The Court concludes that there is no genuine dispute whether the Defendants conducted a reasonable investigation. 15 U.S.C. § 1681s-2(b). As an initial matter, Knight has presented no evidence of any conduct by Navient, LLC, or Navient Corporation, regarding the investigation of the disputes received from the credit reporting agencies.[8] As to NSI, the undisputed facts show that it reviewed the information it had based on the "scant information" it had received from TransUnion and Equifax, provided and confirmed the complete ID and ECOA code as requested, and verified the accuracy of Knight's identifying information, such as his name, social security number, and date of birth. (Docs. 29-3 ¶ 23; 29-4 at 15-20). *See Westra*, 409 F.3d at 827 ("Credit Control's investigation was reasonable given the scant information it received regarding the nature of Westra's dispute."); *Howard*, 2010 WL 2600753, at *4 (granting summary judgment to the defendant who conducted a similar investigation). Knight agreed at his deposition that all of his identifying information was correct. (Doc. 32 at 109:19-110:21). NSI, aware of Knight's long-standing contention that he did not

---

[8] Knight has also failed to provide any evidence that would justify piercing the corporate veil to impose liability on Navient Corporation for NSI's actions. In any event, as discussed below, Knight has failed to demonstrate NSI's liability. In his response to the Defendants' statement of material facts, Knight requests additional time to discover the "true facts" regarding Navient Corporation. (Doc. 39-3 at 3 n.2). That request is **DENIED**.

co-sign the loan, also investigated and confirmed that Knight was jointly obligated on the loan. (Docs. 29-3 ¶ 23; 29-4 at 15-20).

For his part, Knight has failed to provide any evidence beyond his own conclusory allegations or theory that the investigation was unreasonable. (Doc. 39 at 11). *See Stroud v. Bank of America*, 886 F. Supp. 2d 1308, 1314 (S.D. Fla. 2012) (granting summary judgment where the plaintiff presented no evidence beyond "his own allegations or hunches or theories" that the defendant failed to conduct a reasonable investigation). Indeed, at his deposition, Knight did not offer any testimony or evidence when asked what he thought "Navient did wrong in responding to the disputes from the consumer reporting agencies." (Doc. 32 at 110:23-111:15). He simply stated that he had "serious questions." (*Id.*). Accordingly, because there is no genuine dispute whether the Defendants conducted a reasonable investigation, the Defendants are entitled to summary judgment on the FCRA claim.

### D.  State-Law Claims

A district court may decline to exercise supplemental jurisdiction over state-law claims if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c). The Eleventh Circuit has stated that "if the federal claims are dismissed prior to trial, [the Supreme Court's decision in] *Gibbs* strongly encourages or even requires dismissal of state claims." *L.A. Draper & Son v. Wheelabrator-Frye, Inc.*, 735 F.2d 414, 428 (11th Cir. 1984) (citing *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966)). Therefore, because the Defendants are entitled to summary judgment on the sole federal claim, the Court declines to exercise

supplemental jurisdiction over Knight's state-law claims pursuant to 28 U.S.C. § 1367(c).

### III.   CONCLUSION

For the foregoing reasons, Knight's motion for judgment on the pleadings is **DENIED** as to the FCRA claim.  The Defendants' motion for judgment on the pleadings is **DENIED** as to the FCRA claim.  The Defendants' motion for summary judgment is **GRANTED** as to the FCRA claim.  The remaining state-law claims are **REMANDED** to state court.

**SO ORDERED**, this 4th day of March, 2016.

<u>S/ Marc T. Treadwell</u>
MARC T. TREADWELL, JUDGE
UNITED STATES DISTRICT COURT